IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| AGRI STAR MEAT & POULTRY, LLC and IOWA POULTRY FARMS, LLC,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>MORIAH CAPITAL, L.P.,<br><br>　　　　　Defendant. | No. C10-1019<br><br>RULING ON MOTION FOR LEAVE TO AMEND |

## TABLE OF CONTENTS

I.　INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.　PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . 2

III.　RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . 2

IV.　DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
　　A.　Applicable Law. . . . . . . . . . . . . . . . . . . . . . . 4
　　B.　Proposed First Amended and Restated Complaint. . . . . . . 7
　　　　1.　Facts Common to All Counts. . . . . . . . . . . . . 7
　　　　2.　Causes of Action. . . . . . . . . . . . . . . . . . . 9
　　C.　Analysis. . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　　　1.　Standing. . . . . . . . . . . . . . . . . . . . . . . 10
　　　　2.　New Theories of Recovery. . . . . . . . . . . . . . 12
　　　　　　a.　Fraud. . . . . . . . . . . . . . . . . . . . . 13
　　　　　　b.　Intentional Interference with Prospective Business Relationship. . . . . . . . . . . . . . . . . . 13
　　　　　　c.　Fraudulent Conveyance. . . . . . . . . . . . 15
　　　　3.　Claims Against Moriah Capital Management, LP and Moriah Capital Management GP, LLC. . . . . . . . . . . . . . . 16
　　　　4.　Summary. . . . . . . . . . . . . . . . . . . . . . . 17

V.　ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

On the 27th day of April, 2011, this matter came on for telephonic hearing on the Motion for Leave to File First Amended Complaint (docket number 12) filed by the Plaintiffs on February 17, 2011. Plaintiffs Agri Star Meat & Poultry LLC and Iowa Poultry Farms, LLC, were represented by their attorney, Rachel Rowley. Defendant Moriah Capital, L.P., was represented by its attorneys, Bruce Erusha and Leo Esses. At the Court's request, both parties filed supplemental briefs (docket numbers 27 and 30) on May 5, 2011.

## II. PROCEDURAL HISTORY

On August 9, 2010, Plaintiffs Agri Star Meat & Poultry, LLC and Iowa Poultry Farms, LLC filed a complaint against Defendant Moriah Capital, L.P., seeking damages and specific performance for an alleged breach of contract. Defendant filed its answer on December 8, 2010.

On January 6, 2011, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to a February 18, 2011 deadline for adding parties or amending pleadings. In reliance on the pretrial deadlines, trial was scheduled before Chief Judge Linda R. Reade on January 23, 2012.

On February 17, 2011, Plaintiffs filed the instant motion, seeking leave to file a first amended complaint. Plaintiffs seek to add four additional defendants and modify their theories of recovery. Defendant argues that the motion for leave to amend should be denied because the proposed amended claims would be "futile."

## III. RELEVANT FACTS

This case arises from the proposed purchase by Plaintiffs of four chicken-raising facilities in Clayton County, Iowa. According to Plaintiffs, Defendant represented that it "controlled the Real Property and could promptly convey marketable title to Plaintiffs." Plaintiffs assert that the parties agreed to a purchase price of $1.3 million based, in part, on the parties' desire to close the transaction quickly. In its answer, Defendant admits that

2

it entered into discussions with Plaintiffs regarding "the sale of chicken raising facilities located in Iowa." Defendant denies, however, that it controlled the property or could promptly convey marketable title. In its answer, Defendant stated that "it does not possess title to the Real Property, that it is a lender holding a mortgage that encumbered the Real Property, that its loan is secured by personal guarantees, and that Moriah has not initiated foreclosure proceeding against the Real Property."

Plaintiffs further allege that Defendant said it would obtain the "cooperation" of the owners of the property and cause it to be conveyed to Plaintiffs. According to Plaintiffs, when they learned of the "actual state of affairs," they demanded that Defendant take action to fulfill its contractual obligations. Plaintiffs assert that Defendant then requested a $300,000 increase in the purchase price, which Plaintiffs refused.

In their complaint, Plaintiffs seek breach of contract damages (Count I) and specific performance (Count II). Plaintiffs also assert promissory estoppel (Count III), fraudulent inducement (Count IV), fraudulent misrepresentation (Count V), and negligent misrepresentation (Count VI).

In their instant motion, Plaintiffs assert that a number of companies owned by Greg Zilberstein are involved in the proposed transaction.

> Upon receiving Defendant's discovery responses, Plaintiff learned that Defendant Moriah Capital was only one entity out of many owned by a common owner, Greg Zilberstein. Plaintiffs believe that these additional entities contributed to the wrongful actions taken against the Plaintiffs. Plaintiffs also learned that, after the filing of this lawsuit, Moriah Capital obtained ownership of the real property at issue in this litigation. However, instead of transferring the real property to the Plaintiffs, as it was contracted to do, the Defendant transferred the real property to a new entity that it created, Moriah Clayton Holdings, LLC. Plaintiffs believe that this transfer was a fraudulent transfer taken to prevent the Plaintiffs from recovering the real property at issue in this lawsuit.

See Motion for Leave to File First Amended Complaint (docket number 12), ¶ 3 at 1-2.

3

In their proposed first amended and restated complaint, Plaintiffs seek to add four additional defendants: Moriah Capital Management, LP; Moriah Capital Management GP, LLC; Moriah Clayton Holdings, LLC; and Greg Zilberstein. The proposed amended complaint withdraws the claims for specific performance and fraudulent inducement. It adds claims for fraud (Count IV), intentional interference with prospective business relationship (Count VI), and fraudulent conveyance (Count VII).

## IV. DISCUSSION

### A. Applicable Law

Except when amending its pleadings "as a matter or course," as defined in FEDERAL RULE OF CIVIL PROCEDURE 15(a)(1), a party may amend its pleadings "only with the opposing party's written consent or the Court's leave." FED. R. CIV. P. 15(a)(2). Plaintiffs are not entitled to amend their petition "as a matter of course" and Defendant does not consent to Plaintiffs' proposed amendment. Accordingly, Plaintiffs seek leave of the Court to amend their petition and add additional parties.

Rule 15(a)(2) provides "[t]he court should freely give leave [to amend] when justice so requires." The United States Supreme Court has made it clear that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A party does not, however, have an absolute or automatic right to amend. *U.S. ex rel. Lee v. Fairview Health System*, 413 F.3d 748, 749 (8th Cir. 2005).

Denial of leave to amend may be justified "by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Here, Defendant does not claim undue delay or unfair prejudice.[1] Instead, Defendant asserts the

---

[1] While Defendant also does not specifically allege "bad faith," it asserts: "not satisfied with their bargaining position, and now trying to use this Court as leverage, Plaintiffs have come up with a slew of new potential parties and allegations in an attempt to force Moriah Capital, L.P. ("Moriah") to surrender." *See* Response and Memorandum
(continued...)

4

"futility of the amendment." *See also Fairview Health*, 413 F.3d at 749 ("futility is a valid basis for denying leave to amend.").

"Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). Accordingly, it is necessary to review Plaintiffs' proposed amended and restated complaint to determine whether it would withstand a motion to dismiss.

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), a pleading is subject to summary dismissal for "failure to state a claim upon which relief can be granted." In determining whether the pleading has stated a claim for relief, Rule 8(a)(2) requires the pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Recently, the United States Supreme Court has attempted to clarify this pleading standard. In *Bell Atlantic Corp. v. Twombly*, the Court stated:

> FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

---

[1](...continued)
of Law (docket number 18) at 2.

Two years later, in *Ashcroft v. Iqbal*, the Court cited *Twombly* and added:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).

In *Hamilton v. Palm*, 621 F.3d 816 (8th Cir. 2010), the Eighth Circuit Court of Appeals reviewed the standard for summary dismissal, as described in *Twombly* and *Iqbal*. In *Hamilton*, the claimant alleged in his complaint that he was "employed" by the defendants. The district court concluded that the complaint did not adequately plead a master-servant relationship and, therefore, dismissed the complaint. The Eighth Circuit Court of Appeals reversed, summarizing the *Twombly/Iqbal* standard as follows:

> Rule 8(a)(2) of the FEDERAL RULES OF CIVIL PROCEDURE requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2). Rather, those decisions confirmed that Rule 8(a)(2) is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." However, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." A pleading that merely pleads "labels and conclusions," or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of factual enhancement will not suffice. Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Id.* at 817-18 (internal citations omitted). In addition to alleging that he was "employed" by the defendants, the plaintiff in *Hamilton* also alleged that the defendants provided unsafe tools and equipment "for the work they hired to perform." The Eighth Circuit concluded that these allegations were sufficient to survive a motion to dismiss. *Id.* at 819 ("Though far from comprehensive or conclusive, these allegations were sufficient to raise a plausible inference that Hamilton was the Palms' employee. . . .).

With these legal principles in mind, the Court now turns to the allegations contained in Plaintiffs' proposed amended and restated complaint.

### B. *Proposed First Amended and Restated Complaint*

#### 1. *Facts Common to All Counts*

The proposed amended complaint adds Moriah Capital Management, LP and Moriah Capital Management GP, LLC as additional defendants. According to the complaint, proposed defendant Greg Zilberstein is the "sole partner" of defendant Moriah Capital, LP and the proposed additional defendants. The amended complaint also seeks to add Moriah Clayton Holdings, LLC as an additional defendant. According to the amended complaint, all of the "Moriah Defendants" are under "common ownership and control."

In their initial complaint, Plaintiffs allege that they entered into extensive negotiations with Moriah Capital, LP for the purpose of purchasing the four chicken-raising facilities. In their proposed amended complaint, Plaintiffs assert that Zilberstein is the managing partner of Moriah Capital and that the negotiations included him as well. Similarly, the proposed amended complaint asserts that various representations were made by "Zilberstein and Moriah Capital." The proposed amended complaint asserts that Zilberstein and Moriah Capital "repeatedly requested that the Plaintiffs not disclose their

negotiations for the Real Property with members of the Rubashkin family, who, the Plaintiffs later learned, were the titleholders of the Real Property."[2]

The proposed amended complaint further asserts that "the Moriah Defendants, excluding Moriah Clayton, were working with the representatives of Cottonballs [the Rubashkin family corporation which was allegedly the titleholder of the property] in an attempt to obtain a higher price for the Real Property."[3] Zilberstein and Moriah Capital then allegedly sought a $300,000 increase in the purchase price of the property, which Plaintiffs refused.

Plaintiffs assert further that the false representations regarding ownership of the property were made by Zilberstein and Moriah Capital "for the purpose of injuring and/or destroying Plaintiffs' business." Specifically, Plaintiffs claim that Defendants intended to cause Plaintiffs "to discontinue their relationship with other owners of chicken-raising facilities," and then "force the Plaintiffs to accept an increased purchase price for the Real Property after the other owners of chicken-raising facilities had found other arrangements."[4]

Plaintiffs claim that the alleged deception continued after the filing of the lawsuit. According to Plaintiffs, Defendants "continued to mislead the Plaintiffs with the idea that they intended to convey the Real Property to the Plaintiffs," but instead Moriah Capital foreclosed on the real property, obtained marketable title, and then transferred the property to Moriah Clayton Holdings, LLC. According to Plaintiffs, the property was transferred

---

[2] See First Amended and Restated Complaint (docket number 12-1), ¶ 18 at 4.

[3] Id., ¶ 25 at 6.

[4] Id., ¶ 27 at 7.

to Moriah Clayton "with the intent of defrauding Plaintiffs and hindering their recovery of the Real Property in this lawsuit."[5]

## 2. *Causes of Action*

In Count I of their complaint, Plaintiffs seek monetary damages against Moriah Capital, LP for breach of contract. Count I of the proposed amended complaint is virtually identical, except it adds Moriah Capital Management, LP and Moriah Capital Management, GP, LLC as additional defendants.[6]

Count III of the complaint seeks damages against Moriah Capital, LP on a theory of promissory estoppel. The same allegations are found in Count II of the proposed amended complaint, except they are also directed to Moriah Capital Management, LP and Moriah Capital Management GP, LLC.[7]

Plaintiffs' claim of fraudulent misrepresentation is found in Count V of their complaint and Count III of their proposed amended complaint. The allegations are virtually identical, with the addition of Moriah Capital Management, LP and Moriah Capital Management GP, LLC as defendants.

In Count IV of their proposed amended complaint, entitled "Fraud," Plaintiffs seek damages against Greg Zilberstein for alleged material misrepresentations and omissions of material facts. Specifically, it is alleged that Zilberstein "supplied" material misrepresentations to Plaintiffs on and prior to July 22, 2010. It is alleged that Zilberstein knowingly misrepresented facts regarding the true ownership of the property, that the purchase would occur expeditiously, and that Moriah Capital would convey marketable title for $1.3 million. Plaintiffs claim that Zilberstein knew the representations were false,

---

[5] *Id.*, ¶ 28 at 7.

[6] Count II of the complaint, alleging specific performance for breach of contract, was withdrawn in the proposed amended complaint.

[7] Plaintiffs' claim for fraudulent inducement, found in Count IV of the complaint, is not asserted in the proposed amended complaint.

made the representations for an improper purpose, and that Plaintiffs justifiably relied on the misrepresentations to their detriment.

Plaintiffs' claims for negligent misrepresentation are found in Count VI of their complaint and Count V of their proposed amended complaint. The claims are virtually identical, except that Moriah Capital Management, LP and Moriah Capital Management GP, LLC were added as defendants.

The proposed amended complaint also adds two additional theories of recovery. Count VI asserts a claim of intentional interference with a prospective business relationship against Moriah Capital and Greg Zilberstein. It is alleged that Defendants tortiously interfered with "a prospective business and contractual relationship with owners of other chicken-raising facilities" and Plaintiffs. Count VII of the proposed amended complaint – directed to Moriah Capital, Moriah Clayton, and Greg Zilberstein – asserts a claim of fraudulent conveyance. Plaintiffs assert that following the filing of this action, which sought specific performance and conveyance of marketable title to the property, Moriah Capital obtained title to the property and then transferred property to Moriah Clayton with the intent "to hinder or prevent the Plaintiffs from obtaining title to the Real Property to this lawsuit."[8]

### C. Analysis

#### 1. Standing

In its resistance, Defendant asserts, among other things, that Plaintiffs' claims against the four new proposed defendants would be futile. At the hearing, the Court asked counsel whether Defendant has standing to assert futility on behalf of the proposed new defendants. Both parties submitted supplemental briefs in response to the Court's inquiry.

Plaintiffs cited *Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, 2011 WL 1142916 (S.D.N.Y.), in support of the proposition that Defendant only has standing to challenge Plaintiffs' motion for leave to amend on the grounds that it will be unduly

---

[8] *See* First Amended and Restated Complaint (docket number 12-1), ¶ 84 at 16.

prejudiced. While not locating any cases which discuss the issue directly, Defendant cited two cases where the Court addressed futility arguments raised by a current defendant on behalf of a proposed new defendant. *See Sauer, Inc. v. Kanzaki Kokyukoki Mfg. Co. Ltd.*, 853 F. Supp. 1106 (S.D. Iowa), and *Seelye v. Fisher*, 2007 WL 951604 (D. Minn).

The Court believes that Plaintiffs' reliance on *Gary Friedrich* is misplaced. There, the plaintiffs filed a timely motion for leave to amend their complaint, seeking to add 136 additional defendants, including the Walt Disney Company. Also, some of the plaintiffs' original claims had been dismissed earlier by the Court. Accordingly, the plaintiffs sought in their proposed amended complaint to reassert the earlier dismissed claims. The "current defendants" opposed the motion for leave to amend only to the extent that it sought to add Disney as a defendant and to reassert the dismissed claims. Specifically, the current defendants argued that any claim against Disney would be futile. The plaintiffs asserted that the current defendants did not have standing to challenge the proposed amended complaint, which did not add any new claims against them. 2011 WL 1142916 at *3. First, the Court noted that "courts routinely entertain arguments by current parties that an amendment adding new parties would prejudice them by delaying the litigation or causing them to incur costs." *Id.* However, the Court did not stop there. Instead, the Court discussed at length the argument of the current defendants that any claim against Disney would be futile. Only after concluding that the plaintiff had stated a claim against Disney for copyright liability did the Court grant the plaintiffs' motion for leave to amend the complaint to add Disney as a defendant. *Id.* at *7. That is, the Court fully considered a futility argument made by the current defendants on behalf of a proposed new defendant.

In its supplemental brief, Defendant in the instant action cited cases where the Court considered a futility argument made by the current defendant on behalf of a prospective defendant. In *Sauer*, the original defendant's motion to dismiss for lack of personal jurisdiction was granted by the Court. The plaintiff moved to amend the complaint to add

the original defendant's American-based subsidiary, Tuff Torq Corp. The original defendant resisted, contending "Sauer's attempt to add Tuff Torq as a defendant would be futile in that Tuff Torq is not amenable to personal jurisdiction in this district." 853 F. Supp. at 1109. The Court denied the motion for leave to amend, finding that the "proposed amendment is futile with respect to the addition of Tuff Torq as a defendant." *Id.* at 1110. *See also Seelye v. Fisher*, 2007 WL 951604 (D. Minn.) (denying leave to add additional parties when the claims would be futile).

While the legal authority on this issue appears to be limited, the cases support a view that a current defendant may assert futility on behalf of a prospective defendant. This result would seem to have particular application in this case, where the four prospective defendants have a close legal relationship with the current Defendant, and it appears likely that all of the defendants would be represented by the same attorneys. A different result may be appropriate if the current Defendant purported to assert futility on behalf of an unrelated prospective defendant. (Although in those circumstances, the current Defendant would still be free to argue undue delay, prejudice, or the other commonly recognized grounds for defeating a motion to amend.) In summary, the Court concludes that Moriah Capital, L.P., has standing to assert a claim of futility on behalf of Zilberstein and the other Moriah defendants.

### 2. *New Theories of Recovery*

In their proposed amended complaint, Plaintiffs assert three new theories of recovery. The proposed amended complaint adds Greg Zilberstein as a named Defendant and purports to state three causes of action against him: fraud (Count IV), intentional interference with prospective business relationships (Count VI), and fraudulent conveyance (Count VII). Assuming the truth of the allegations contained in the proposed amended

complaint, Zilberstein is the sole partner in Moriah Capital, LP and Moriah Capital Management, LP, and is the sole member of Moriah Capital Management GP, LLC.[9]

### a. Fraud

In Count IV of the proposed amended complaint, Plaintiffs assert Zilberstein entered into negotiations with Plaintiffs for the purchase of the four chicken-raising facilities. Zilberstein made various representations regarding the condition of the properties, the ability of Moriah Capital to convey marketable title, and the ability to "close expeditiously." Plaintiffs assert that Zilberstein knew that the representations were false, and that they justifiably relied on the material misrepresentations to their detriment.[10] These allegations give Zilberstein "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964. The proposed amended complaint states sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. *See also Hamilton*, 621 F.3d at 817 ("Rule 8(a)(2) is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"). Accordingly, Plaintiffs' proposed claim survives Defendant's futility challenge.

### b. *Intentional Interference with Prospective Business Relationship*

In Count VI of their proposed amended complaint, Plaintiffs allege that they had "a prospective business and contractual relationship with owners of other chicken-raising facilities." Plaintiffs assert that Zilberstein and Moriah Capital "intentionally and improperly interfered with the relationship by misrepresenting that Moriah Capital had

---

[9] The proposed amended complaint does not allege that Zilberstein is the sole shareholder of Moriah Clayton Holdings, LLC, but does assert that the various Moriah Defendants "are under common ownership and control."

[10] *See* First Amended and Restated Complaint (docket number 12-1), ¶¶ 55-60 at 11-12.

13

marketable title to the Real Property, would convey the Real Property to the Plaintiffs for $1.3 million and would close the sale expeditiously."[11]

In Iowa, the tort of interference with prospective contractual relationships includes five elements: (1) a prospective contractual or business relationship; (2) the defendant knew of the prospective relationship; (3) the defendant intentionally and improperly interfered with the relationship; (4) the defendant's interference caused the relationship to fail to materialize; and (5) the amount of resulting damages. *Blumenthal Inv. Trusts v. City of West Des Moines*, 636 N/W.2d 255, 269 (Iowa 2001). In most cases, the tortious interference is directed at third persons. At the time of hearing, the Court asked whether a claim of intentional interference with a prospective business relationship may proceed if the plaintiff does not assert that the defendant improperly contacted a third-party. Plaintiffs responded in their supplemental brief by citing *Farmers Co-op Elevator, Inc. v. State Bank*, 236 N.W.2d 674 (Iowa 1975).

In *Farmers Co-op*, the plaintiff sought damages against its bank for wrongfully dishonoring checks drawn by the elevator on its account with the bank. The elevator also claimed that "the Bank caused the Elevator to be closed, to lose customers' good will, and to suffer loss of profits it otherwise would have earned." *Id.* at 679. While the Court concluded that the elevator's claim against the bank failed, it recognized that the alleged tortious interference need not be directed at third persons.

> While the acts relied on in cases which find tortious interference with prospective advantage are usually directed at third persons – causing them not to enter into transactions with the plaintiff – we see no reason why the result should be different when the acts are directed at the plaintiff itself, provided of course the other elements of a cause of action are present.

*Id.*

---

[11] *Id.*, ¶ 74 at 14.

For purposes of the instant motion, the Court must accept as true the allegations found in the proposed amended complaint, and determine whether the claim for relief is plausible on its face. *Hamilton*, 621 F.3d at 817. Here, Plaintiffs allege in Count VI that Defendant and Zilberstein intentionally made false statements "with the intent to cause the Plaintiff to discontinue their relationship with other owners of chicken-raising facilities."[12] Assuming the truth of the allegations, the Court concludes that Plaintiffs have adequately pleaded the cause of action, thereby defeating Defendant's assertion of futility.

### c. *Fraudulent Conveyance*

In Count VII of their proposed amended complaint, Plaintiffs assert that Moriah Capital, Moriah Clayton, and Greg Zilberstein are liable under a theory of fraudulent conveyance. Plaintiffs assert that the property which is the subject of this lawsuit was transferred from Moriah Capital to Moriah Clayton for no consideration and "with the actual intent to hinder and defraud the Plaintiffs." According to Plaintiffs, "Zilberstein knew that Defendant Moriah Capital had a contractual obligation to transfer the Real Property to the Plaintiffs, but transferred the Real Property to Moriah Clayton to hinder or prevent the Plaintiffs from obtaining title to the Real Property through this lawsuit."[13] In its response, Defendant makes no claim regarding the alleged "futility" of proposed Count VII.[14]

---

[12] *Id.*, ¶ 75 at 14.

[13] *Id.*, ¶ 84 at 16.

[14] The Court has some doubts regarding whether Zilberstein is properly included in a claim for fraudulent conveyance, when the property was allegedly conveyed from Moriah Capital to Moriah Clayton. Nonetheless, Defendant did not raise the issue in its response, nor was it briefed by the parties. Accordingly, it will not be addressed here.

### 3. *Claims Against Moriah Capital Management, LP and Moriah Capital Management GP, LLC*

In their proposed amended complaint, Plaintiffs seek to add Moriah Capital Management, LP, and Moriah Capital Management GP, LLC, to their claims of breach of contract (Count I), promissory estoppel (Count II), fraudulent misrepresentation (Count III), and negligent misrepresentation (Count V).

The Court has carefully reviewed Plaintiffs' proposed first amended and restated complaint for any references to Moriah Capital Management, LP, and Moriah Capital Management GP, LLC. According to Plaintiffs, these two entities are "under common ownership and control" with Moriah Capital, LP, and Moriah Clayton Holdings, LLC. Greg Zilberstein is the sole partner in Moriah Capital Management LP, and the sole member of Moriah Capital Management GP, LLC. Apart from these relationships, there are no factual allegations that Moriah Capital Management, LP, or Moriah Capital Management GP, LLC played any role in these events. Occasionally, Plaintiffs assert that "the Moriah Defendants" – apparently including Moriah Capital Management, LP, and Moriah Capital Management GP, LLC – "were working with the representatives of Cottonballs" or "continue to mislead the Plaintiffs," but they fail to include factual allegations which are "enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The "sheer possibility that a defendant has acted unlawfully" is insufficient to satisfy the plausibility standard found in *Iqbal*. *Iqbal*, 129 S. Ct. at 1949. *See also Hamilton*, 621 F.3d at 818 ("A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice."). Therefore, the Court finds that the claims against Moriah Capital Management, LP, and Moriah Capital Management GP, LLC, could not survive a Rule 12(b)(6) motion to dismiss, and their motion for leave to amend in this regard is futile.

### *4. Summary*

In summary, the Court finds that the new causes of action set forth in the proposed amended complaint (Counts IV, VI, and VII) could withstand a motion to dismiss under Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE. Accordingly, that portion of the motion for leave to file a first amended complaint cannot be denied on the basis of futility. *Zutz*, 601 F.3d at 850.

On the other hand, the Court also finds that the claims in the proposed amended complaint against Moriah Capital Management, LP and Moriah Capital Management GP, LLC fail to meet the *Twombly/Iqbal* standard. That is, the amended complaint would be subject to summary dismissal on motions by Moriah Capital Management, LP, and Moriah Capital Management GP, LLC, for "failure to state a claim upon which relief can be granted." Therefore, Plaintiffs' proposed amendment as to Moriah Capital Management, LP, and Moriah Capital Management GP, LLC is "futile."

At the time of hearing, the Court and counsel discussed the proper remedy if the Court found that parts of the proposed amended complaint were futile, while other parts of the proposed amended complaint were not. In its supplemental brief, Defendant cited *Asbury Square, LLC v. Amoco Oil Co.*, 396 F. Supp. 2d 1009, 1012 (S.D. Iowa 2005), where, under similar circumstances, the Court ordered that the plaintiff may file an amended complaint "recast pursuant to this Order." The Court will enter a similar direction here.

### *V. ORDER*

IT IS THEREFORE ORDERED that the Motion for Leave to File First Amended Complaint (docket number 12) filed by the Plaintiffs is **GRANTED** in part and **DENIED** in part as follows:

1. Plaintiffs will be permitted to assert those additional causes of action found in Counts IV, VI, and VII of their proposed First Amended and Restated Complaint.

2. Plaintiffs will not be permitted to amend their complaint to assert claims against Moriah Capital Management, LP, or Moriah Capital Management GP, LLC.

3. Not later than **ten (10) days** following the entry of this Order, Plaintiffs may file an amended complaint which is not inconsistent with this Order.

DATED this 6th day of May, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA