IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| AGRI STAR MEAT & POULTRY LLC and IOWA POULTRY FARMS, LLC,<br><br>   Plaintiffs,<br><br>vs.<br><br>MORIAH CAPITAL, L.P., MORIAH CLAYTON HOLDINGS, LLC and GREG ZILBERSTEIN,<br><br>   Defendants. | No. C10-1019<br><br>RULING ON MOTION TO COMPEL |

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 A. The "Agreement" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
 B. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. APPLICABLE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 A. Deficient Interrogatory Answers . . . . . . . . . . . . . . . . . . . 9
  1. Interrogatory No. 3 . . . . . . . . . . . . . . . . . . . . . . 9
  2. Interrogatory No. 6 . . . . . . . . . . . . . . . . . . . . . 12
  3. Interrogatory No. 7 . . . . . . . . . . . . . . . . . . . . . 12
  4. Interrogatory No. 11 and Interrogatory No. 12 . . . . . . . . . . . . 14
 B. Deficient Document Production . . . . . . . . . . . . . . . . . . . 17
  1. Alleged Failure to Organize and Label Responsive Documents . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  2. Alleged Failure to Produce Requested Documents . . . . . . . . 18
 C. Plaintiffs' Request for Expenses Including Attorney Fees . . . . . . . . . 19

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Motion To Compel (docket number 41) filed by the Plaintiffs on June 10, 2011, the Resistance (docket number 42) filed by Defendant Moriah Capital, L.P. on June 20, 2011, and the Reply (docket number 47) filed by the Plaintiffs on June 27, 2011. Pursuant to Local Rule 7.c, this matter will be decided without oral argument.

## II. PROCEDURAL HISTORY

On August 9, 2010, Plaintiffs Agri Star Meat & Poultry, LLC and Iowa Poultry Farms, LLC (collectively, "Agri Star") filed a Complaint seeking damages and specific performance from Defendant Moriah Capital, L.P. ("Moriah Capital"). Plaintiffs claimed they entered into a contract with Defendant to purchase four chicken raising facilities (the "Real Property") and that Defendant did not perform its contractual obligations. In seeking damages and specific performance, Plaintiffs asserted five counts: breach of contract, promissory estoppel, fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation. Plaintiffs also demanded a jury trial in this matter.

On May 16, 2011, Plaintiffs filed an amended complaint, adding Moriah Clayton Holdings, LLC ("Moriah Clayton") and Greg Zilberstein as defendants. In the amended complaint, Plaintiffs assert six counts against Moriah Capital: breach of contract, promissory estoppel, fraudulent misrepresentation, negligent misrepresentation, fraudulent conveyance, and intentional interference with a prospective business relationship. Plaintiffs assert that Moriah Clayton and Zilberstein fraudulently conveyed the real property. In addition, Plaintiffs claim that Zilberstein intentionally interfered with a prospective business relationship and that he engaged in fraudulent behavior. On June 6, 2011, Moriah Capital filed an Answer to the Amended Complaint and submitted as affirmative defenses that the Plaintiffs' claims should be barred in whole or in part

2

pursuant to the statute of frauds and because there was no meeting of the minds.[1] Trial is scheduled before Chief Judge Linda R. Reade on January 23, 2012.

## III. ISSUE PRESENTED

On June 10, 2011, Plaintiffs filed the instant Motion to Compel pursuant to FEDERAL RULE OF CIVIL PROCEDURE 37 and Local Rule 37. Agri Star argues that Moriah Capital has failed to fully answer interrogatories and failed to adequately respond to document requests. Plaintiffs also assert they are entitled to expenses incurred in litigating this matter, including attorney fees.

## IV. RELEVANT FACTS

### A. The "Agreement"

During late Spring 2010, Plaintiffs entered into discussions with Moriah Capital regarding the purchase of chicken raising facilities in Clayton County, Iowa. Plaintiffs allege Greg Zilberstein – who allegedly manages and controls Moriah Capital – took part in these discussions. According to Plaintiffs, they told Zilberstein and Moriah Capital that they urgently needed the Real Property to house thousands of chickens they were scheduled to receive. Plaintiffs also assert Zilberstein and Moriah Capital were aware that Plaintiffs were negotiating with owners of other chicken-raising facilities. Moriah Capital admits that it entered into discussions with the Plaintiffs, but otherwise denies the truth of Plaintiffs' allegations.

In response to Plaintiffs' inquiry about the property, Zilberstein and Moriah Capital allegedly represented that they controlled the Real Property and could convey the property to Plaintiffs free and clear of all encumbrances. Allegedly, Zilberstein and Moriah Capital initially requested $1.6 million for the property, but the parties eventually agreed to a purchase price of $1.3 million, cash at closing. Plaintiffs claim that Defendants told them not to disclose the negotiations to the Rubashkin family, and that Defendants wanted to

---

[1] The deadline for Moriah Clayton and Zilberstein to file an answer was extended to August 4, 2011.

close the sale quickly. According to Plaintiffs, Defendants did not disclose that they did not have or could not obtain marketable title to the Real Property. Moriah Capital admits it agreed to sell the real property subject to standard corporate terms and conditions, that it sought a purchase price of $1.3 million, and that it wanted to close quickly. However, Moriah Capital denies the parties agreed on a purchase price and denies Plaintiffs' other allegations.

Plaintiffs, allegedly acting under the belief they would soon close on the property, claim to have discontinued their negotiations with owners of other chicken raising facilities. Plaintiffs allege they entered into an agreement with Moriah Capital to purchase the Real Property on July 22, 2010. Plaintiffs allege that it was only after that time that Zilberstein and Moriah Capital disclosed that Moriah Capital did not possess title to the Real Property. Defendants allegedly told Plaintiffs that Moriah Capital's only interest in the Real Property was that of a lender, with the loan secured by personal guarantees by members of Cottonballs, LLC ("Cottonballs"), which in fact owned the Real Property. Furthermore, Defendants allegedly informed Plaintiffs that the Real Property was in default, had not been generating any revenue, but that Moriah Capital had failed to initiate foreclosure action against the Real Property.

Plaintiffs then demanded that Zilberstein and Moriah Capital fulfill their contractual obligations and convey the Real Property to Plaintiffs. In response, Defendants allegedly represented that they would approach the Rubashkin family – who were the owners of Cottonballs, the titleholder of the Real Property – and would eventually convey the Real Property to Plaintiffs. Defendants allegedly told Cottonballs that they planned to initiate foreclosure proceedings, and counsel for Cottonballs notified Plaintiffs of Defendants' intentions.

In Plaintiffs' amended complaint, they allege Zilberstein and Moriah Capital were working with Cottonballs to obtain a higher price from Plaintiffs for the Real Property. After an alleged meeting between Defendants and Cottonballs, Zilberstein allegedly told

4

Plaintiffs that, because of a personal relationship, he was unwilling to pursue Cottonballs with respect to a personal guarantee on the loan. Zilberstein and Moriah Capital allegedly requested that Plaintiffs agree to a $300,000 increase in the purchase price, which would enable Zilberstein and Moriah Capital to forego enforcement of the personal guarantees. Plaintiffs refused and demanded that Defendants perform their obligations under the July 22 agreement. Defendants admit they were hesitant to pursue the personal guarantees on the mortgage, but otherwise deny Plaintiffs' allegations.

After Plaintiffs filed the instant action on August 9, 2010, Zilberstein and Moriah Capital foreclosed upon the Real Property and obtained marketable title on October 28, 2010. On November 4, 2010, Moriah Capital transferred the Real Property to Moriah Clayton – allegedly a newly created entity also managed and controlled by Zilberstein. Defendants admit the Real Property was transferred, but deny Plaintiffs' remaining allegations.

### B. Discovery

On September 27, 2010, Plaintiffs served interrogatories and requests for production of documents on Defendant Moriah Capital. On November 19, 2010 – after receiving Moriah Capital's discovery responses – Plaintiff's counsel, Rachel T. Rowley, sent a letter to Moriah Capital's counsel, Bruce A. Erusha, identifying alleged deficiencies in the discovery responses and requesting a response by December 3.[2] On November 20, 2010, Erusha sent a responsive email requesting that the time to "formulate a response" be extended to December 10, 2010.[3] On December 15, 2010, Rowley sent an email to Erusha noting that he had not yet responded to her November 19 objections, and asking him to supplement his responses by December 23.[4] Apparently getting no response, on

---

[2] *See* Plaintiffs' Exhibit 1 (docket number 41-3 at 1-4).

[3] *See* Plaintiffs' Exhibit 2 (docket number 41-3 at 5).

[4] *Id.*

January 27, 2011, Rowley again sent an email asking Erusha to immediately supplement Defendants' discovery responses. Rowley notified Erusha that if he did not respond by February 3, 2011, Plaintiffs would "be forced to bring this to the attention of the court."[5]

On March 2, 2011, the parties held a conference call. During the call, the parties disagreed about a number of the alleged deficiencies in Moriah Capital's discovery responses. However, Moriah Capital did agree that some responses were deficient and agreed to supplement its discovery responses. Specifically, Moriah Capital agreed that it would supplement Interrogatories Nos. 2, 3, 6, 7, 8, 11, 12, and 15, though only to the extent it had such information and the information related to the Real Property at issue. Defendants also agreed to supplement their document production.

Defendants served their supplemental discovery responses on March 28, 2011, but Plaintiffs' were not satisfied with the responses. On April 6, 2011, Attorney Rowley sent a letter to Attorney Erusha, stating that "there are still deficiencies in your production," and advising Defendants' attorneys that "if we do not obtain copies of unredacted emails by the end of the week, we will be forced to raise our concerns with the court."[6] Moriah Capital did not respond to Plaintiffs' requests. On May 31, 2011 Plaintiffs' counsel sent Defendants' counsel a letter giving Defendants until June 3, 2011 to supplement its responses to Interrogatories Nos. 3, 6, 7, 11 and 12 and to cure "numerous deficiencies" in the document production.[7] Specifically, the May 31 letter noted that the documents were not produced as they were kept in the ordinary course of business, nor were they organized and labeled to correspond to the categories in the request for documents. Furthermore, Plaintiffs alleged that some documents were missing and that others needed to be submitted in non-redacted form. On June 3, 2011, Defendants' Attorney Esses

---

[5] Plaintiffs' Exhibit 3 (docket number 41-3 at 7).

[6] Plaintiffs' Exhibit 4 (docket number 41-3 at 8-9).

[7] See Plaintiffs' Exhibit 5 (docket number 41-3 at 10-13).

responded to the May 31 letter, disputing the assertions, and suggesting a June 6 conference call to discuss the issues.[8]

A conference call was held on June 6, 2011. Plaintiffs allege that during the conference call, Defendants agreed to produce, by the morning of June 7, non-redacted copies of documents pertaining to Defendants' negotiations with third parties. For their part, Defendants allege that it was during the June 6 conference call that Plaintiffs first requested production of documents regarding the individual guarantees related to the mortgage of the Real Property. Defendants asserted in the conference call that they believe the documents are irrelevant, but they subsequently agreed to produce the documents once a confidentiality agreement was fully executed.[9]

On June 10, Plaintiffs filed the instant Motion. Plaintiffs claimed that they had still not received the unredacted documents that Defendants agreed to produce by the morning of June 7,[10] that document production remained deficient, and that the responses to interrogatories are also deficient.

## V. APPLICABLE LAW

The FEDERAL RULES OF CIVIL PROCEDURE authorize broad discovery. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."). In a discovery context,

---

[8] *See* Plaintiffs' Exhibit 6 (docket number 41-3 at 14-15).

[9] In their Resistance filed on June 20, Defendants allege the confidentiality agreement has been distributed, but not fully executed.

[10] After the June 6 conference call, the parties exchanged a series of e-mails regarding the non-redacted documents. At issue was the extent to which persons other than Plaintiffs' attorneys, staff, and expert could read the non-redacted documents once the confidentiality order was finalized. Plaintiffs claimed that once the confidentiality order was finalized, they could send the documents to clients or other persons who need to see them for use in this case. Defendants argued that the parties would reconsider who can review the documents once the parties entered into the confidentiality agreement. In any event, Defendants sent the non-redacted documents on June 16.

7

relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). *See also Davis v. Union Pacific R.R. Co.*, 2008 WL 3992761 (E.D. Ark. 2008) at *2 ("a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."); *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan.2006) (same).

"Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (quoting *Rolscreen Co. v. Pella Products*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)). Although the standard is one of liberality, "relevancy under Rule 26 is not without bounds." *Bredemus v. International Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008). *See also Oppenheimer Fund*, 437 U.S. at 351, 98 S. Ct. 2380 ("At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 91 L. Ed. 451 (1947)).

Generally, the party resisting production of the requested information bears the burden of establishing lack of relevancy. *Marook*, 259 F.R.D. at 394 (citing *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000)). Accordingly, "the mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." *St. Paul Reinsurance Co., Ltd.*, 198 F.R.D. at 511 (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa.1980))). Rather, "the party resisting discovery 'must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.'" *Id.* at

512 (quoting *Josephs*, 677 F.2d at 992 Id. at 512) (internal citation omitted). In some cases, however, if the request for discovery is "overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Marook*, 259 F.R.D. at 395 (quoting *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 at *1 (D. Colo. 2008).

## *VI. DISCUSSION*

Plaintiffs seek an order from the Court compelling Defendants to supplement their responses to Interrogatories Nos. 3, 6, 7, 11 and 12. Plaintiffs also seek an order compelling Defendants to organize and label responsive documents to correspond to the categories of Plaintiffs' requests, and to adequately respond to Plaintiffs' requests for production. Additionally, Plaintiffs request the reimbursement of expenses incurred in drafting the instant motion.

As a preliminary matter, the Court pauses to examine the scope of this discovery request. Defendants claim the lawsuit's central allegation is Moriah Capital's alleged breach of contract and that "this is what discovery should be about."[11] However, Plaintiffs have asserted claims in addition to breach of contract. To the extent Defendants have omitted any information related to claims other than breach of contract, the Court orders that Defendants produce this information in accordance with the guidelines below.

### *A. Deficient Interrogatory Answers*

Plaintiffs assert that Defendants have deficiently answered Interrogatories Nos. 3, 6, 7 ,11 and 12.

#### *1. Interrogatory No. 3*

In Interrogatory No. 3 ("No. 3"), Plaintiffs requested:

> Other than your attorneys, please identify the name, address and telephone number of all persons or entities with whom you have had *any contact* (either written, oral or any other form of communication) *or sought advice from regarding the facts and*

---

[11] Defendants' Resistance (docket number 42) at 4.

> *circumstances in this action* (which will be collectively referred to below as a "Communication"), and state:
>
> a. The name of each individual involved in the Communication;
> b. Whether the Communication was written, oral, electronic, or otherwise;
> c. The date of the Communication;
> d. The method of Communication;
> e. The contents of the Communication;
> f. The identity of any witnesses to the Communication; and
> g. The identity of all documents concerning each Communication;

*See* Plaintiffs' Exhibit 7 (docket number 41-3) at 5 (emphasis added).

In their response to No. 3, Defendants referred to their response to Interrogatory No. 2 ("No. 2"). No. 2 requested the name, address and telephone number of "every person known to you . . ." with "any knowledge or information regarding the facts and circumstances surrounding the incidents alleged in the Complaint and/or your proposed Answer thereto."[12] By requesting the information of "every person" with "any knowledge or information," No. 2 was broad enough to cover all the people Plaintiffs requested information from in No. 3. Certainly anyone who Plaintiffs sought advice from or had contact with regarding the facts and circumstances of this action would fall under the broader language of No. 2.

Plaintiffs argue, however, that Defendants' response to No. 2 does not sufficiently address specifics about the "communication" requested in No. 3. That is, Plaintiffs argue that a response to No. 2 does not include all of the information sought in No. 3. In response to No. 2, Moriah Capital provided several names (though it omitted many of the telephone numbers and addresses) of persons having knowledge, and very briefly described

---

[12] *See* Plaintiffs' Exhibit 7 (docket number 41-3) at 3.

these persons' general knowledge of the situation. Moriah Capital makes no effort, however, to respond to Plaintiffs' request for information regarding communications.

In response to No. 2, Moriah Capital claims the request is overly broad and unduly burdensome because it requires Moriah Capital to include a "narrative" of each person's knowledge. To the extent this summary objection may be considered applicable to information regarding communications, as requested in No. 3, it is rejected. "The mere statement by a party that the interrogatory was . . . 'overly broad [or] burdensome . . .' is not adequate to voice a successful objection." *St. Paul Reinsurance Co.*, 198 F.R.D. at 511 (quoting *Josephs*, 677 F.2d at 992) (internal quotation omitted). Although Defendants now claim that Plaintiffs' request requires it to recall too many conversations and that it cannot remember these conversations, this does not show specifically how the interrogatory is overly broad or burdensome. *See id.* at 512; *see also Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan.1997) (holding the objecting party must reveal the nature of its burden); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d. Cir.1986) (holding that the objecting party must demonstrate that a particularized harm is likely to occur). Furthermore, this is not a case where Defendants need to recall conversations from a multitude of persons or entities or in which the information they are asked to produce is dated. *See Marook*, 259 F.R.D. at 395-396 (holding that when the requested information is from many years ago, the request is overly burdensome). Rather, Defendants note only six people with knowledge of the facts and circumstances of this case and most of the discoverable conversations took place within the last year.

Since Plaintiffs' request is not overly broad or burdensome on its face and Defendants have not proven the request is overly broad or burdensome, the Court orders that Defendants must supplement its responses to Interrogatory No. 3 with information regarding the specific contents of conversations it has had with parties regarding the matters in this dispute. Although Defendants may not recall the specific contents of each

and every conversation, the Court orders they make a good faith effort to supplement its responses to the extent they remember these conversations.

### 2. *Interrogatory No. 6*

In Interrogatory No. 6, Plaintiffs requested:

> Please identify and describe with specificity all past and present negotiations you have had with any third party relating to leasing, renting or selling the Real Property. Please include in your answer, the date(s) of the negotiations, the parties thereto, the substance of the negotiations, the identity of each and every person with knowledge concerning the negotiations, each and every document that relates in any way to the negotiations, and each and every document that directly relates to the negotiations and/or which you intend to have marked as an exhibit at trial with regard to any negotiations.

*See* Plaintiffs' Exhibit 7 (docket number 41-3) at 5.

Defendants responded to this request by naming the third parties they had negotiated with during the relevant period and indicating that they would later provide the documents pertaining to these negotiations. Eventually, the parties agreed that Defendants would produce the documents pertaining to the negotiations in non-redacted form by June 6, 2011, but as of June 10, 2011 (when the motion to compel was filed), the documents had not been produced. On June 16, six days after the Plaintiffs filed their motion, Defendants produced the documents in non-redacted form on June 16. Accordingly, the substantive issues surrounding Interrogatory No. 6 seem to have been resolved. To the extent Moriah Capital has not fully responded to No. 6, it must do so now.

### 3. *Interrogatory No. 7*

In Interrogatory No. 7, Plaintiffs requested:

> Identify all ownership interests in Moriah Capital. Please provide in your answer the amount of each partner's investment in Moriah, their interest and valuation.

In response to this request, Defendants eventually disclosed that Greg Zilberstein and Alexandre Speaker were "the persons at Moriah responsible for making decisions

regarding any negotiations or sale of the subject premises[.]"[13] Plaintiffs argue that Defendants should disclose the ownership interest each of these individuals has, because their ownership interest is relevant to how the decision not to transfer the chicken barns was made. Similarly, Plaintiffs argue that Defendants should disclose any other owners because they too affect how decisions would be made. In its Resistance, Defendants argue that turning over a list of all the owners of Moriah Capital would require them to disclose highly confidential and proprietary information that is not relevant or likely to lead to the discovery of admissible evidence.

The FEDERAL RULES OF CIVIL PROCEDURE authorize "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1). Relevancy has been construed broadly to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. at 351. When there is a dispute about relevancy, Defendants normally bear the burden in proving a request is not relevant, unless relevancy is not apparent on its face. *Marook*, 259 F.R.D. at 395 (quoting *Cunningham*, 2008 WL 2902621 at *1).

In this case, Defendants argue that since they admitted that Zilberstein and Speaker were responsible for decisions regarding negotiations of the subject property, their particular ownership interests or others' ownership interests are not relevant. The Court concludes, however, that this information could be relevant in determining how Zilberstein and Speaker made their decisions and, therefore, relevant to Plaintiffs' claims. Although Zilberstein and Speaker may have made the decisions regarding the sale of the Real Property, their decisions certainly would impact other owners, and these owners could influence Zilberstein and Speaker in this matter. Therefore, the Court concludes that Defendants must respond to Plaintiffs' request regarding disclosure of the owners of Moriah Capital. However, since the relevancy of each person's or entity's "investment"

---

[13] Plaintiffs' Exhibit 7 (docket number 41-3) at 6.

and "valuation" is not readily apparent, the Court does not order disclosure of this information.

### 4. *Interrogatory No. 11 and Interrogatory No. 12*

In Interrogatory No. 11, Plaintiffs requested:

> Please identify and describe with specificity all past and present business dealings between you and the following persons/entities, including, without limitation, a specific description of the nature of the business dealing, the names of all persons and entities involved, the dates of all events relevant to the business dealing and all material terms involved in the business dealings: Heshy Rubashkin, Aaron Rubashkin, Shalom Rubashkin, Cottonballs, LLC, PWSR, LLC, PWDR, LLC, Nevel Propeties, Corp, and Agriprocessors, other member of the Rabashkin [*sic*] Family and/or any of their affiliates, agents, employees, servants, officers, directors, accountants, attorneys, consultants, sureties, indemnitors, insurers, subcontractors, or other persons and/or entity acting or purporting to act on behalf of the entity or person.

In Interrogatory No. 12, Plaintiffs requested:

> Please identify and describe with specificity all past and present business dealings between Greg Zilberstein and the following persons/entities, including, without limitation, a specific description of the nature of the business dealing, the names of all persons and entities involved, the dates of all events relevant to the business dealing and all material terms involved in the business dealings: Heshy Rubashkin, Aaron Rubashkin, Shalom Rubashkin, Cottonballs, LLC, PWSR, LLC, PWDR, LLC, Nevel Propeties, Corp, and Agriprocessors, other member of the Rabashkin [*sic*] Family and/or any of their affiliates, agents, employees, servants, officers, directors, accountants, attorneys, consultants, sureties, indemnitors, insurers, subcontractors, or other persons and/or entity acting or purporting to act on behalf of the entity or person.

In response to Interrogatory No. 11, Defendants noted that during negotiations with Plaintiffs, they had conversations regarding the subject property with Heshy Rubashkin,

Aaron Rubashkin, and Ron Lazar (counsel to Rubashkin). Defendants also described the general subject matter of their discussions with these people, but say they do not recall the dates of such communication or the specifics of the communication. In response to Interrogatory No. 12, Defendants referred to their response to Interrogatory No. 11.

Plaintiffs assert that Defendants' response was deficient because the interrogatories ask for more information than Defendants provided. Specifically, Plaintiffs argue that Defendants only provided information regarding the subject Real Property and did not address all the parties mentioned in the interrogatory. Furthermore, Plaintiffs argue the responses did not specifically describe the business dealings, failed to list the dates of the relevant events, and failed to include the material terms of such dealings. Plaintiffs argue that because discovery has shown the property was not actually owned by Moriah Capital, but rather by Cottonballs, information regarding Moriah Capital's prior business dealings with Cottonballs and related entities is relevant. With regard to the additional persons and entities listed in the interrogatory – PWSR, LLC, PWDR, LLC, Nevel Propeties, Corp, and Agriprocessors – Plaintiffs believe they are "owners or companies owned by similar individuals or otherwise involved in the business dealings at issue."[14]

In resistance, Defendants argue that Plaintiffs did not limit their requests to the persons and entities involved in the relevant transaction. Moreover, Defendants argue that Plaintiffs "do not – nor have they ever – explain[ed] why the business dealings with any of these entities, except for the Rubashkins and Cottonballs, LLC, are relevant to this action."[15] In summary, Defendants argue that this request is overly broad and asks for irrelevant information.

In this case, there is no question that business dealings related to the subject Real Property with *any* company listed in Interrogatories Nos. 11 and 12 is relevant and

---

[14] Plaintiffs' Brief (docket number 41-2) at 10.

[15] Defendants' Resistance (docket number 42) at 8.

15

discoverable. To the extent that any of these companies had business dealings related to the subject Real Property, the Court orders that Defendants must provide all requested information.

However, the Court notes that if the request for discovery is "overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request." *Marook*, 259 F.R.D. at 395 (quoting *Cunningham*, 2008 WL 2902621 at *1). The Court is troubled by Interrogatories Nos. 11 and 12 with regard to PWSR, LLC, PWDR, LLC, Nevel Propeties, Corp, and Agriprocessors. Never in Plaintiffs' Complaint or Amended Complaint do they mention these entities. Plaintiffs attempt to establish their relevance by saying only that they believe the entities are "owners or companies owned by similar individuals or otherwise involved in the business dealings at issue."[16] Although the Court concluded above that to the extent these companies had business dealings regarding the subject Real Property, Defendants must disclose this information, the Court also concludes that Plaintiffs have not met their burden of showing how "all past and present business dealings" are relevant. Therefore, to the extent these companies engaged in business dealings regarding the subject property, Defendants must disclose the requested information. However, Defendants need not disclose all past and present transactions regarding these companies because relevance is not readily apparent and Plaintiffs have not met their burden.

With regard Heshy Rubashkin, Aaron Rubashkin, Shalom Rubashkin, other members of the Rubashkin family, and Cottonballs, LLC, the Court concludes Defendants must disclose all past and present business dealings. Plaintiffs allege Defendants engaged in fraudulent behavior, misrepresented their position, and also allege that Cottonballs – which was owned by members of the Rubashkin family – actually owned the subject Real Property. Furthermore, Plaintiffs allege that Defendants and Cottonballs may have conspired to make Plaintiffs pay more for the property. Given the nature of these

---

[16] Plaintiffs' Brief (docket number 41-2) at 10.

accusations, the relevancy of these person's past and present business dealings is readily apparent, and the Court orders that Defendants' disclose all the requested information. The Court also concludes that Defendants' summary reference to Heshy Rubashkin, Aaron Rubashkin, and Ron Lazar is not sufficient. Defendants must also provide specifics of the business dealings with the Rubashkins and Lazar as requested in the interrogatories.

### B. Deficient Document Production

Plaintiffs assert that Defendants failed to organize and label responsive documents. Plaintiffs also assert that Defendants failed to produce all responsive documents requested or to provide a privilege log for documents not produced.

### 1. Alleged Failure to Organize and Label Responsive Documents

FEDERAL RULE OF CIVIL PROCEDURE 34(b)(2)(E)(i) states that "unless otherwise stipulated or ordered by the court . . . a party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." *Id.* Plaintiffs argue that since Defendants did neither of these, the Court should consider it a failure to respond and order Moriah Capital to identify what documents are responsive to Plaintiffs' request.

In resistance, Defendants claims that the parties stipulated in a March conference call that neither party would have to identify what documents were responsive to each request.[17] Furthermore, Defendants argue that this was confirmed at the June conference call. Given Defendants' claim in their Resistance that the parties agreed that neither party would have to identify what documents were responsive to each request, and Plaintiffs' failure to refute this claim in their Reply, the Court concludes that Plaintiffs' motion to compel the organization and labeling of responsive documents will be denied.

---

[17] *See* Defendants' Resistance (docket number 42) at 8; *see also* Plaintiffs' Exhibit 6 (docket number 41-3) at 2.

## 2. Alleged Failure to Produce Requested Documents

Plaintiffs also assert that Defendants have not provided documents related to certain personal guarantees that secured the mortgage on the subject Real Property. Furthermore, Plaintiffs assert that other documents have not been produced due to Defendants' limited definition of what is relevant. Although Plaintiffs admit they are unaware of what documents Defendants may possess, Plaintiffs argue that since Defendants have not objected to document requests, the Court should order Defendants to produce all relevant, non-privileged documents. Further, Plaintiffs assert that Defendants are required to provide a privilege log to the extent they claim certain documents are privileged.

With regard to the documents relating to personal guarantees, Defendants argue that the June 6 discovery meeting was the first time they had heard about this request. In Defendants' Resistance, they noted that they would provide documents related to the individual guarantees upon full execution of the confidentiality agreement. On June 23, 2011, a protective order was issued by the Court and if these documents have not yet been provided, the Court orders that Defendants provide them.

Plaintiffs also request that Defendants produce all remaining documents and produce a privilege log for those documents Defendants claim are privileged. In resistance, Defendants claim they have produced all the documents requested and argue that Plaintiffs do not point to specific documents that need to be produced.

The Court orders Defendants produce any missing documents to the extent they are relevant, bearing in mind the Court's instructions on relevance articulated above. That is, with regard to the Cottonballs and the Rubashkin family, the Court orders Defendants to produce all documents as articulated in Request Nos. 8, 16, 18, 19, 20, and 21. However, with regard to the other entities mentioned in those requests, the Court only orders that Defendant produce the documents relevant to the Real Property at issue. In terms of the other document requests, the Court orders Defendants produce documents related to Nos. 1-15, 17, 22-30, to the extent Defendants have not done so and to the extent these

documents exist. Finally, to the extent Defendants claim privilege, they are required to provide a privilege log.

### C. Plaintiffs' Request for Expenses Including Attorney Fees

Plaintiffs request that they be awarded costs and fees in accordance with FEDERAL RULE OF CIVIL PROCEDURE 37(a)(5)(A). The rule provides that if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, then the Court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney fees. The exceptions listed in Rule 37(a)(5)(A) are not applicable here. As set forth above, Plaintiffs attempted repeatedly to resolve the discovery dispute without court intervention. Moriah Capital's failure to respond was not substantially justified, and there are no other circumstances which would make an award of expenses unjust.

The parties shall attempt to agree on the reasonable expenses incurred by Plaintiffs in making the instant motion, including attorney fees. If the parties are unable to agree on a reasonable amount, then Plaintiffs may file an appropriate application for attorney fees and expenses. Defendants will be given an opportunity to be heard on Plaintiffs' request.

### VII. ORDER

IT IS THEREFORE ORDERED that the Motion to Compel (docket number 41) filed by the Plaintiffs is **GRANTED** in part and **DENIED** in part as set forth above.

DATED this 8th day of August, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA